THE STATE OF IOWA *v.* RUHL.

A party cannot claim the privilege, as a matter of right, to recall a witness, either for the purpose of preparing a bill of exceptions, or for the purpose of impeaching the witness, or to settle the question as to what he did testify to when previously on the stand.

Where it only appears from the record, that the district court refused to allow a witness to be recalled, the appellate court is bound to presume that the discretion lodged with that tribunal over such matters of practice, was properly exercised.

The State of Iowa v. Ruhl.

Under an indictment for enticing away an unmarried female, under the age of fifteen years, from her father, &c., without their consent, for the purpose of prostitution, the defendant cannot show that the said female before said enticing, told him that she was over fifteen years of age.

A party is liable for a wrongful act, where there exists a criminal intent, although the act done, is not that which was intended. The wrongful intent to do one act, is transposed to the other, and constitutes the same offense.

In a criminal case, it is not competent to prove what the prosecuting witness had said upon the subject matter of her testimony, except for the purpose of impeaching her; and when the evidence is offered for this purpose, the way must be prepared, by asking her the necessary questions while on the stand; nor is it competent to show what she said she had sworn to.

The words, "or other persons having the legal charge of her person," in section 2584 of the Code, do not mean that such person shall have all the power and authority over the child possessed by the parent, or legally appointed guardian; nor do they mean the person who has the temporary charge, or a charge for a particular purpose—as a school-mistress or governess.

If otherwise made out, the crime will be complete, if the enticing away was without the consent of a person who, with the permission of the parents, if living, was entrusted with the care, custody, charge, or control of the child, as an actual member of the family.

Where on the trial of an idictment for enticing away an unmarried female, under the age of fifteen years, &c., the evidence tended to show that the female had resided with her uncle, O., for about seven years, as a member of his family, the court was asked to instruct as follows: "That if she was living in the family of O., as a member of his family, and had no parent or guardian in the state, and was wholly under the protection and care of said O., then she was under the control of said O. within the statute, provided she was under fifteen years of age at the time, and there by the consent of her parents, which consent may be proved by the relationship of the family, and the length of time she has been there, in the absence of other testimony," which instruction was given by the court; and where the defendant asked the court to instruct as follows: "That if the child was not under the control of father or mother, any one who claimed to have such control, must show that he has been legally appointed the guardian for that purpose, or that said child has been apprenticed," which instruction the court refused; Held, That there was no error in giving the one, and refusing the other instruction.

Where the parents of the female enticed away, are dead, and no guardian has been appointed, those with whom she resided as a member of the family, and who had her wholly under their care and protection, would

The State of Iowa v. Ruhl.

have "the legal charge of her person," within the meaning of section 2584 of the Code.

The word "prostitution," in section 2584 of the Code, means common, indiscriminate, illicit, intercourse, and not merely seduction, or sexual intercourse confined exclusively with one man.

Where on the trial of an indictment for enticing away an unmarried female, &c., there was testimony of a purpose on the part of defendant, "to seduce and enjoy the body of the said female, and that he had taken her away in order to have carnal intercourse with her, and did so enjoy her person, but there was no testimony that he purposed that she should be carnally enjoyed by others, nor that she should be devoted to promiscuous carnal intercourse, nor that he took her, or proposed taking her, to any house of prostitution; and where the defendant asked the court to instruct the jury as follows: "That if the defendant only intended to obtain the body of the said female, for his own personal carnal enjoyment, and no more, then the act did not amount to her prostitution in the sense of the law," which instruction the court refused to give; *Held*, That the instruction should have been given.

*Appeal from the Des Moines District Court.*

THURSDAY, JUNE 9.

THIS was an indictment for taking and enticing away an unmarried female, under the age of fifteen years, from and without the consent of the person having the legal charge of her person, for the purpose of prostitution. On the trial, the defendant offered certain testimony, which was objected to and rejected. He also asked certain instructions, which were refused, and objected to those asked and given at the request of the state. There was a verdict of guilty; motions in arrest, and for a new trial, overruled; and defendant sentenced to the penitentiary for three years. The other necessary facts are stated in the opinion of the court.

*M. D. Browning* and *C. Ben Darwin*, for the appellant, cited 1 Greenl. Ev., 583; 2 Cow. & H. Notes, 759; 1 Peters, C. C., 203; 5 Conn., 271; 8 Pick., 560; 1 Blackf., 86; 1 Monroe, 647; 7 Searg. & Rawle, 9; 2 Phill. Ev., 434; *The People* v. *Carpenter*, 8 Barb., 610; 12 Metcalf, 93.

*Samuel A. Rice*, (Attorney General,) for the state.

Wright, C. J.—Several errors are assigned, and they will be briefly noticed in their order.

From the first bill of exceptions, it seems that during the examination of the defendant's witnesses, he proposed to recall the prosecuting witness, (or Matilda M. Clark, the female alleged to have been enticed away,) in order, *first*, to prepare a bill of exceptions ; *second*, for the purpose of impeaching her ; and, *third*, to settle the question as to what she did testify to, when previously upon the stand.

The defendant could not claim the privilege, as a matter of right, to recall the witness for either of these purposes. It is only shown that the court refused to have the witness recalled, and we are bound to presume that the discretion lodged with that tribunal over such matters of practice, was properly exercised.

The second bill of exceptions shows, that the defendant proposed to prove that the said Matilda had, before the alleged enticing, told him that she was over fifteen years of age, which was objected to, and the objection sustained.

The language of the section (2584) under which this indictment was found is, that " if any person take or entice away an unmarried female, under the age of fifteen years, from her father or mother, guardian, or other person having the legal charge of her person, without their consent, he shall upon conviction, &c." The object of the proposed testimony, was to show that defendant believed, or had good reason to believe, that the prosecuting witness was, at the time of taking or enticing away, over fifteen years of age. Would such proof aid the defendant, if in fact the female was under the age named ? We think not. It is not like the case stated by appellant, and found in the books, of a married man, through a mistake of the person, having intercourse with a woman whom he supposed to be his wife, when she was not. In such a case there is no offense, for none was intended, either in law or morals. In the case at bar, however, if defendant enticed the female away, for the purpose of defilement or prostitution, there existed a crimi-

nal or wrongful intent—even though she was over the age of fifteen. The testimony offered was, therefore, irrelevant —for the only effect of it would have been, to show that he intended one wrong, and by mistake committed another. The wrongful intent to do the one act, is only transposed to the other. And though the wrong intended is not indictable, the defendant would still be liable, if the wrong done is so. Bishop's Cr. Law, secs. 247, 249, 252, 254, (note 4). In this last section, the rule is thus briefly stated : " The wrong intended, but not done, and the wrong done, but not intended, coalesce, and together constitute the same offense, not always in the same degree, as if the prisoner had intended the thing unintentionally done."

. It appears from the third and fourth bills of exception, that defendant proposed to prove what the prosecuting witness had said before the alleged abduction, with reference to the treatment which she had received at her uncle's, where she was living—about her intention to leave his house —and also what she said she had sworn to before the examing court. All of this testimony was objected to, and the objection sustained. It was not competent, of course, to prove what the prosecuting witness had said upon these subjects, except for the purpose of impeaching her. To do this, the defendant had not prepared the way, by asking the necessary questions of her when on the stand. It is true, she was asked what she had sworn to, or if she did not swear to a particular thing before the examining court. It was not proposed to prove, by the testimony offered, what she did swear, but what she said she had sworn to. This was properly rejected.

The testimony tended to show that said Matilda had resided with her uncle for about seven years, as a member of his family. At the request of the state, the court instructed the jury : " that if she was living in the family of John Ogden, as a member of his family, and had no parent or guardian in the state, and was wholly under the protection and care of said Ogden, then she was under the control of said Og-

den, within the statute, provided she was under fifteen years of age at the time, and there by the consent of her parents, which consent may be proved by the relationship of the family, and the length of time she has been there, in the absence of other testimony." The following instruction upon the same subject, asked by defendant, was refused : "if the child is not under the control of father or mother, any one else who claimed to have such control, must show that he has been legally appointed the guardian for that purpose, or that said child has been apprenticed."

We think there was no error in giving and refusing these instructions. One element essential to make up the offense is, that the female shall be enticed away, without the consent of the father, mother, &c. Another one, where she is not under the control of father, mother, or guardian, is, that the person not giving the consent, shall have the legal charge of her person. Or, to change the statement of the propositions, and bringing into more immediate connection the two elements stated, if those having the legal charge of the person of said female, shall consent to such taking or enticing away, for the purpose named, then the offense would not be made out. What is meant by the words, "or other person having the legal charge of her person ?" They do not mean, in our opinion, that such person shall have all the power and authority over the child, possessed by the parent, or legally appointed guardian. Nor do they mean a person who has the temporary charge, or a charge for a particular purpose—as a school-mistress, or governess. If otherwise made out, the crime would be complete, if the taking away was without the consent of the person, who, with the permission of the parents, if living, was entrusted with the care, custody, charge or control of the child, as an actual member of the family. If she was temporarily at a relative's house, and he should consent, and the parent not, this would not excuse the person charged; though even such a case as that is said not to be clear, under the statute of 9 Geo., 4, C. 31, sec. 20, which is very similar to ours, the

language there being : " or any other person having the lawful care or charge of her." 3 Mod., 84 ; 1 East., P. C., 457. See, also, Arch. Cr. Pl., 370 ; 4 Blackst., 209. If the parents are dead, and no guardian has been appointed, those with whom she resided as a member of the family, and who had her wholly under their care and protection, would have the " legal charge of her person," within the meaning of the statute. Under the age of fifteen, the child is legally incapable of giving consent; and if those enticing her away, for the purpose named in this statute, would not be liable to its penalties, (the parents being dead), unless those claiming and exercising the control over her person, were her legally appointed guardians, or held her as an apprentice, then, the most defenseless would be, so far as this offense is concerned, completely at the mercy of the base and selfish debauchee. This was not the intention of the statute.

It is recited in the bill of exceptions, that there was testimony of a purpose, on the part of defendant, " to seduce and enjoy the body of the said Matilda, and that he had taken her away, in order to have carnal intercourse with her, and did so enjoy her person; but there was no testimony that he purposed that she should be carnally enjoyed by others, nor that she should be devoted to promiscuous carnal intercourse, nor that he took her, or purposed taking her, to any house of prostitution." Upon this state of facts, the defendant asked the following, among other instructions, upon the same point, all of which were refused : " If the defendant only intended to obtain the body of the said Matilda, for his own personal carnal enjoyment, and no more, then the act did not amount to her prostitution, in the sense of the law.

We think this instruction should have been given. The question hinges upon the meaning of the word prostitution. Does that mean seduction, or sexual intercourse confined exclusively to one man ? or does it mean common, indiscriminate, illicit intercourse ? To determine this, we are to ascertain what is the appropriate and well authorized mean-

ing of the term, for in this sense the legislature is supposed to have used it. And as to this, there can, as it seems to us, be no fair room for doubt. Mr. Bouvier says that prostitution means, "the common lewdness of a woman, for gain." A prostitute, according to Webster, is a "female given to indiscriminate lewdness; a strumpet;" and prostitution is defined as " the act, or practice, of offering the body to an indiscriminate intercourse with men ; common lewdness of a female." Walker's definition is, " the act of setting to sale ; the life of a public strumpet."

The statute of Massachusetts, (1845, C. 216, sec. 1), punished any one who should, fraudulently and deceitfully entice, or take away an unmarried woman, for the purpose of prostitution at a house of ill-fame, assignation, or elsewhere, &c. Under this statute, it was held that a man would not be guilty, who enticed a woman to leave her place of abode for the sole purpose of illicit intercourse with him. In the examination of the question, DEWEY, J., uses this language : " The offense made punishable by this statute, is something beyond that of merely procuring a female to leave her father's house, for the sole purpose of illicit sexual intercourse with the individual thus soliciting her to accompany him ; she must be enticed away with the view, and for the purpose, of placing her in a house of ill-fame, place of assignation, or elsewhere, to become a prostitute in the more full and exact sense of the term ; she must be placed there, for common and indiscriminate sexual intercourse with men, or, at least, she must be enticed away for the purpose of sexual intercourse by others than the party who thus enticed her ; and a mere enticing away of a female for a personal sexual intercourse, will not subject the offender to the penalties of the statute. *Commonwealth* v. *Cook*, 12 Met., 93.

This case, we think, is clear and decisive, as to the point now under consideration. It is true that the statute of Massachusetts uses the words, "at a house of ill-fame, assignation, or elsewhere." But all of the circumstances of the case show, that it turned upon the meaning of the word

prostitution—for it appears that defendant did entice the female away, and lodged with her for more than a week, sleeping in the same bed. Such enticing was held to be for the purpose of seduction, and not for the purpose contemplated by the statute.

It may be remarked, however, that though the defendant may have designed alone a personal sexual intercourse, and had no purpose of making the female a prostitute, in the exact sense of that term, yet if he took her to a house of ill-fame, assignation, or other place, where she would be, in the society alone of the lewd and lascivious, he might still be guilty, upon the principle that her prostitution might be regarded as almost necessarily to follow; and every person is presumed to have intended, or purposed, that which is the natural, necessary, and even probable consequence of his act.

Without referring to the facts, or quoting from the opinion, we remark that the case of *Carpenter* v. *The People*, 8 Barb., 603, fully sustains the views above expressed.

Judgment reversed.