TENEMENT HOUSE DEPARTMENT OF THE CITY OF NEW YORK, Appellant, *v.* LUCY A. MCDEVITT, Respondent.

Tenement House Law — provision imposing penalty upon owner, if tenement house or any part thereof is used for purpose of prostitution — construction of statute — evidence — proof of single act of vice by occupant, unknown to owner, not sufficient to support judgment for penalty.

1. The provision of section 109 of the Tenement House Law (L. 1913, ch. 598) that "No tenement house or any part thereof or the lot or premises thereof shall be used for the purpose of prostitution or assignation of any description," is a valid act of legislation in the exercise of the police power of the state, and for each and every violation thereof the owner of the tenement house is subject to the penalty of fifty dollars imposed by section 124 of the statute (Cons. Laws, ch. 61), to be recovered in a civil action.

2. The penalty imposed by the statute in question is recoverable without reference to the knowledge or negligence of the owner, but the owner is not liable for the penalty because of a single act of vice, undiscovered and undiscoverable either by him or his agent. There must be a condition of permanence sufficient to constitute a use of the premises for the prohibited acts, and proof of acts of vice on a single day by two female occupants of a tenement house, followed at once by their eviction, is not sufficient in itself to show that the building has been used for prostitution within the meaning of the statute.

*Tenement House Dept.* v. *McDevitt*, 165 App. Div. 367, affirmed.

(Argued April 26, 1915; decided May 25, 1915.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 4, 1914, affirming a determination of the Appellate Term which affirmed a judgment of the Municipal Court of the city of New York in favor of defendant dismissing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank L. Polk, Corporation Counsel (John P. O'Brien and F. E. V. Dunn of counsel), for appellant.* Sections 109 and 124 of the Tenement House Law render an owner liable for a penalty of fifty dollars, where his house is used for the purposes of prostitution irrespective of knowledge on his part of such use. (*Tenement House Dept.* v. *Weil,* 134 N. Y. Supp. 109; *Lyon* v. *M. R. Co.,* 142 N. Y. 298; *Matter of Gilfeather,* 101 App. Div. 150.) Section 109 of the Tenement House Law is a lawful exercise of the police power. (*Tenement House Dept.* v. *Moeschen,* 203 U. S. 583; 179 N. Y. 325; 89 App. Div. 526; *Health Dept.* v. *Trinity Church,* 145 N.Y. 32; *People ex rel. Cohen* v. *Butler,* 125 App. Div. 384; *People* v. *Ewer,* 141 N. Y. 129; *People ex rel. Nechamcus* v. *Warden, etc.,* 144 N. Y. 529; *Matter of Jacobs,* 98 N. Y. 98; *People* v. *Lochner,* 177 N. Y. 145; *People ex rel. Armstrong* v. *Warden, etc.,* 183 N. Y. 223; *People* v. *Pierson,* 176 N. Y. 201; *People* v. *King,* 110 N. Y. 418; *People* v. *McGuire,* 113 App. Div. 631.) Chapter 598 of the Laws of 1913, amending section 109 of the Tenement House Law, does not deprive the defendant of his property nor of any of the rights or privileges secured to citizens of the state and is constitutional. (*Fertilizing Co.* v. *Hyde Park,* 97 U. S. 667; *Watertown* v. *Mayo,* 109 Mass. 318; *Crowley* v. *Christansen,* 137 U. S. 89; *Barbier* v. *Connolly,* 113 U. S. 31; *Hayes* v. *Missouri,* 120 U. S. 68; *People ex rel. Armstrong* v. *Warden of City Prison,* 183 N. Y. 223; *Matter of Morgan,* 114

App. Div. 45, 54; *People ex rel. Hatch* v. *Reardon*, 184 N. Y. 445; *People ex rel. Eisman* v. *Ronner*, 185 N. Y. 285; *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271.)

*Harold M. Phillips, Herman Ackerman* and *George B. Holbert* for respondent. The owner of a tenement house is liable to a penalty of fifty dollars for a violation of the provisions of the Tenement House Law only when it is shown that the owner had knowledge of such violation. (*U. S. Condensed Milk Co.* v. *Smith*, 116 App. Div. 15; *City of New York* v. *Owen*, 42 Misc. Rep. 221; 94 App. Div. 407; *Hoboken Beef Co.* v. *Hand*, 104 App. Div. 390; *Schmidt* v. *Justus*, 92 N. Y. Supp. 362; *Health Dept.* v. *Knoll*, 70 N. Y. 530; *Goodspeed* v. *Ithaca St. Ry. Co.*, 84 N. Y. Supp. 383; *People* v. *Taylor*, 192 N. Y. 400; *Chase* v. *N. Y. C. R. R. Co.*, 26 N. Y. 525.) The exercise of the police power granted in section 109 of the Tenement House Law would be unreasonable unless knowledge of the commission of the offense were brought home to the defendant. (*Matter of State* v. *Froelich*, 115 Wis. 32; *Colon* v. *Lisk*, 153 N. Y. 188; *Wright* v. *Hart*, 182 N. Y. 330; *Tenement House Dept.* v. *Whitney*, 145 N. Y. Supp. 1011.) Chapter 598 of the Laws of 1913, amending section 109 of the Tenement House Law, as construed by the corporation counsel, is unconstitutional. (*Ives* v. *So. Buffalo R. Co.*, 201 N. Y. 271; *State of Washington* v. *Clausen*, 65 Wash. 156; *Dougherty* v. *Thomas*, 174 Mich. 372; *Camp* v. *Rogers*, 44 Conn. 291; *Strahlendorf* v. *Long Island R. R. Co.*, 162 App. Div. 358; *Rosin* v. *Lidgerwood*, 89 App. Div. 245; *People ex rel. Sinkler* v. *Terry*, 108 N. Y. 7; *People* v. *Rosenberg*, 138 N. Y. 416; *People* v. *Lochner*, 177 N. Y. 159; *Comm.* v. *Keenan*, 152 Mass. 9; *Comm.* v. *Hagan*, 152 Mass. 565; *Howard* v. *Moot*, 64 N. Y. 262.)

CARDOZO, J. The action is brought to recover a penalty for the violation of section 109 of the Tenement

House Law (L. 1909, ch. 99, as amended by L. 1913, ch. 598). The charge is that the building has been used for the purpose of prostitution. The building is a tenement house, and is the home of twenty-two families. The defendant 'is the owner. It is conceded that on July 23, 1913, two women, one the occupant of an apartment on the first floor, and the other the occupant of an apartment on the second floor, used their rooms for the purpose of prostitution, and that they were arrested, found guilty, and sentenced to imprisonment. One of the women had lived in the house for six months; the other had lived there for a week. There is no evidence of previous misconduct by either of them. A stipulation conceding that they offended on a single day makes up the plaintiff's case. The owner testified that the unlawful use was without her knowledge. She testified that she believed the tenants to be respectable. Testimony to the same effect was given by the janitor. As soon as the police gave notice of the arrest, the women were evicted. The trial judge held, upon sufficient evidence, that the defendant and her agent were innocent of any willful wrong. He held that they had not even been shown to have been negligent. The facts as he found them must be accepted in this court. The question to be determined is whether a tenant's wrongful use of an apartment on a single day subjects the owner, irrespective of knowledge or of opportunity for knowledge, to the statutory penalty.

Section 109 of the Tenement House Law (Cons. Laws, ch. 61) as amended in 1913 (L. 1913, ch. 598), provides as follows: "No tenement house, or the lot or premises thereof shall be used for a lodging house or stable, or for the storage or handling of rags. No tenement house or any part thereof or the lot or premises thereof shall be used for the purpose of prostitution or assignation of any description. No horse, cow, calf, swine, sheep or goat shall be kept in a tenement house or on the same lot or premises thereof except that, outside of the fire limits, not

more than two horses may be kept on such lot or premises, provided they are stabled at least twenty feet distant from any building used for living purposes, and that such stabling is not detrimental to health in the opinion of the department charged with the enforcement of this chapter." The provision " no tenement house or any part thereof or the lot or premises thereof shall be used for the purpose of prostitution or assignation of any description," came into the section for the first time through the amendment of 1913. Automatically, there became attached to the violation of the statute, as thus enlarged, the penalties which section 124 of the Tenement House Law had already prescribed for the violation of any provision of that chapter of the laws. " The owner of any tenement house or part thereof, or of any building or structure upon the same lot with a tenement house, or of the said lot, where any violation of this chapter or a nuisance exists, and any person who shall violate or assist in violating any provision of this chapter, or any notice or order of the department charged with its enforcement, shall also jointly and severally for each such violation and each such nuisance be subject to a civil penalty of fifty dollars." (Tenement House Law, section 124.) It is for the penalty thus prescribed that the defendant has been sued.

We think the plaintiff failed to prove that the defendant's building had been used, in the sense contemplated by the statute, for the purpose of prostitution. To charge an owner with liability, there must be more than a single act of vice in the seclusion and secrecy of a tenant's apartment. Against such an offense, a landlord, however vigilant, is helpless. To make the owner liable, it must appear that the building has been " used " for the purpose of prostitution, and this imports, not an isolated act of vice, but some measure, even though brief, of continuity and permanence. To say that a building is used for such a purpose means, in substance, that it is kept or maintained for such a purpose. Many well-considered

cases sustain that construction of the statute. Thus, in *Comm.* v. *Patterson* (138 Mass. 498), the defendant was charged with keeping and maintaining a tenement that was "used" for the illegal sale of intoxicating liquors. Evidence was given that two sales had been made. The trial judge held that if the defendant had made either of the sales, the jury must find him guilty. The Supreme Judicial Court of Massachusetts reversed the judgment. It held, in an opinion by HOLMES, J., that a building can be said to be "used" for the illegal sale of intoxicating liquors, within the meaning of the statute which makes it a nuisance, "on the strength of a single casual sale, made without premeditation, in the course of a lawful business. Not only do the words 'used' and 'keep or maintain' import a certain degree of permanence, but the same idea is usually a part of the conception of a nuisance." There was a like ruling in *Comm.* v. *Hayes* (150 Mass. 506) and in *State* v. *Stanley* (84 Me. 555). In *Regina* v. *Davies* (L. R. [1897] 2 Q. B. 199) the court construed a statute by which the owner or occupier of a house or room, who kept or used it for the purpose of unlawful gaming carried on therein, was made liable to a penalty. The decision was that a single unlawful game, played by the defendant and his friends, without evidence that any one else had ever played an unlawful game at the defendant's house on any other occasion, did not justify a conviction. A like construction has been given to statutes prohibiting the use of buildings for the purpose of prostitution. (*State* v. *Irvin,* 117 Ia. 469; *State* v. *Ruhl,* 8 Ia. 447.) In all these cases, some element of permanence has been held essential to a conviction. It is true, of course, that a building may be so used even on a single day as to justify the inference with but slight additional evidence that the illicit use has been continuous. But the inference in such a case is one of fact and not of law, and must be drawn, if at all, by the trial judge in the light of all the circumstances.

The plaintiff makes no claim in this case that such an inference is possible. It takes its stand upon the broad position that a single act of vice leads as a matter of law to the conclusion that the building in which the act occurs is one used for prostitution. We do not need to inquire at this time whether the legislature has the power to visit on the owner a penalty so drastic. At least if it has that purpose, it must say so in plain words. We think it has not said so yet.

When we look to the context of this statute, our view of its meaning is confirmed. The same section that prohibits the use of a tenement house for prostitution prohibits its use for a lodging house or stable, or for the storage or handling of rags. In these latter prohibitions, the element of continuity is manifest. We ought not to hold that in the first sentence of the statute the word "use" means one thing, and in the second sentence something else. The same section goes on to prohibit the keeping of horses, cows and other animals in the tenement or on the lot, and again there is involved the prohibition of a continuous relation. The same thought, indeed, is latent in the language of section 124, which imposes the penalty. That section is applicable to many other violations than those resulting from the infringement of section 109, and all will be found to involve some measure of continuity. There is significance in the form of words in which the penalty is declared: "The owner of any tenement house  *  *  *  where any violation of this chapter or a nuisance exists," shall be liable, etc. "Where any violation of this chapter or a nuisance *exists*" — these words suggest more than a single act; they suggest a permanent state; the offense must, so to speak, have attached itself to the building.

We hold, therefore, that an owner is not liable for a penalty because of a single act of vice, undiscovered and undiscoverable either by him or by his agent. The penalty is imposed where the building or some part of it has

been kept or maintained by the occupant for the purpose of prostitution. If, however, there has been a "use" for prostitution in that sense, we think it is not a defense that the use was unknown to the owner. The statute does not make his liability dependent upon knowledge or even upon negligence. It makes his liability dependent upon the prohibited use. If use is interpreted to mean, not an isolated act, but a practice or relation, the statute, we think, charges the owner with the duty to inform himself of the conditions prevailing in his building. In the long run, and looking, as legislation must, to the average results, the law, as thus construed, is not likely to work injustice. If the occupant of an apartment has used it for indiscriminate intercourse with men, has used it in the sense that she has kept or maintained it for that purpose (*Comm.* v. *Cook,* 12 Metc. 93; *State* v. *Ruhl,* 8 Ia. 447, 454), the diligent owner will seldom be blind to the offense. Looking, then, to the average results, the legislature has said that the owner must prevent at his peril a vicious use which can rarely be continued without his fault. It rules out inquiry into his excuses in the particular instance, because such excuses, if accepted, would tend to nullify the law. It frames its rules to meet the necessities of the average, rather than the exceptional case, and adjusts its penalties in correspondence with the common experience of mankind.

We think that the statute, thus construed, is a valid act of legislation. The landlord who fails to suppress the continued use of his tenement for purposes of vice is in the plight of any other owner who fails to abate a nuisance on his land. If the nuisance exists, he must abate it at his peril, or answer for the consequences. (*Bohan* v. *Port Jervis Gas Light Co.,* 122 N. Y. 18, 24.) We do not need to determine now the limits within which criminal liability in the strict sense may attach to one as the result of the misconduct of another, to the master as the result of the misconduct of the servant, to

the landlord as the result of the misconduct of the tenant. The owner under this statute is not charged with any crime. He is made subject to a penalty, but the recovery is through a civil action and not through criminal prosecution. (*United States* v. *Regan*, 232 U. S. 37; *People* v. *Briggs*, 114 N. Y. 56; *Kurz* v. *Doerr*, 180 N. Y. 88, 91.) "The purpose of the action is not the punishment of the defendant in the sense legitimately applicable to the term, but such action is brought to recover the penalty as a fixed sum by way of indemnity to the public for the injury suffered by reason of the violation of the statute." (*People* v. *Briggs*, *supra*, at p. 65.) We have no doubt that an owner may be made liable in a civil action for the damages resulting to the public from the continued presence of a nuisance upon his land, and that the noxious use which shall constitute a nuisance may be enlarged by legislation. (*Bertholf* v. *O'Reilly*, 74 N. Y. 509, 525.) We have no doubt that the measure of this liability may be defined, in the discretion of the lawmakers, by a liquidated penalty. There is no claim that the penalty is oppressive in amount.

The defendant asks us to test the meaning of this statute by standards applicable to statutes that govern infamous crimes. The analogy, however, is deceptive. The element of conscious wrongdoing, the guilty mind accompanying the guilty act, is associated with the concept of crimes that are punished as infamous. (*Ex parte Wilson*, 114 U. S. 417, 423; *Mackin* v. *United States*, 117 U. S. 348, 350.) Even there it is not an invariable element. (*Reg.* v. *Prince*, 13 Cox Cr. Cas. 138; Wharton Cr. Law [11th ed.], section 108.) But in the prosecution of minor offenses, there is a wider range of practice and of power. Prosecutions for petty penalties have always constituted in our law a class by themselves. (*Callan* v. *Wilson*, 127 U. S. 540, 552; *Natal* v. *Louisiana*, 139 U. S. 621; *Pearson* v. *Wimbish*, 124 Ga. 701; *Steinert* v. *Sobey*, 14 App. Div. 505, 507; *People ex rel. Murray*

v. *Justices,* 74 N. Y. 406; *Schick* v. *United States,* 195
U. S. 65, 67, 68.) That is true though the prosecution is
criminal in form. It is still more plainly true where, as
here, a trifling penalty is imposed to be recovered through
civil remedies. In such cases, it is enough that according
to common experience there is a more or less constant
relation between the act or omission against which the
penalty is aimed, and the guilt, whether due to design
or to neglect, of the person by whom the penalty is
payable. The legislature stops the inquiry when that
relation has been ascertained, rules out the excuses of the
individual, and requires him at his peril to conform to
the average standard of conduct and of knowledge.
(*Comm.* v. *Smith,* 166 Mass. 370, 375; *Comm.* v. *Regan,*
182 Mass. 22, 25.) The law is not oblivious of considera-
tions of degree. "The nature and extent of the penalty
attached to the offense," said WILLS, J., in *Regina* v.
*Tolson* (23 Q. B. D. 168, 177), "may reasonably be con-
sidered. There is nothing that need shock any mind in
the payment of a small pecuniary penalty by a person who
has unwittingly done something detrimental to the public
interest."

This statute, as we have said, must be viewed as defin-
ing, not a crime in the strict sense, but a civil right of
action for the benefit of the public. It does not go so far,
therefore, as many other statutes which have been held
valid by the courts. We need not now decide whether we
should follow the ruling that was made in all the cases
that we cite. We refer to them rather as illustrations of
a principle and a tendency. In a recent case in Massa-
chusetts (*Comm.* v. *Mixer,* 207 Mass. 141) a carrier trans-
ported liquors into a city where a license for the sale of
liquors had not been granted. The defendant's ignorance
of the contents of the package was held to be unavailing
as a defense. Many cases are collated in the opinion of
the court. In *Comm.* v. *Smith* (166 Mass. 370) and in
*Comm.* v. *Kane* (173 Mass. 477) a statute imposed a fine

on any one found present in a gaming house if imple·
ments of gaming were found in the same room. The
court held that it made no difference that the defendant
was not proved to have known of the presence of the
implements. It said that according to common expe-
rience, presence in a gaming house, with implements of
gaming at hand, is usually accompanied by knowledge,
and that the law, therefore, may stop with the prelim-
inary fact. "It may say that people are not likely to
resort to a common gaming house without knowing it,
and that they must take the risk of knowing the charac-
ter of the place to which they resort, if the implements
of gaming are actually present." Many other cases, both
in our own state and elsewhere, illustrate in varying forms
the application of like principles. (*People* v. *West*, 106
N. Y. 293; *People* v. *Werner*, 174 N. Y. 132; *People* v.
*D'Antonio*, 150 App. Div. 109; *Comm.* v. *N. Y. C. & H.
R. R. R. Co.*, 202 Mass. 394; *Comm.* v. *Gray*, 150 Mass.
327; *Comm.* v. *Lavery*, 188 Mass. 13, 16; *People* v. *Roby*,
52 Mich. 577, 579.) In all these cases the statutes con-
strued were made in the exercise of the police power, and
in all the evil was repressed by penalties that took no heed
of the state of mind of the offender.

We have not yet referred to other sections of the stat-
ute which were thought at the Appellate Division to have
a bearing on the case before us. Section 150 says that a
person who commits prostitution in a tenement house, or
keeps or maintains a house of prostitution or assignation
in a tenement, shall be deemed a vagrant and shall be
punishable as such. Section 151 imposes a lien of $1,000
on a tenement house which "shall be used for the pur-
pose of a house of prostitution or assignation of any
description, with the permission of the owner thereof, or
his agent." Section 152 says that if the house is used
for such a purpose with the permission of the lessee or his
agent, the lease shall be terminable at the election of the
lessor. Section 153 says that the house "shall be deemed

to have been used for the purpose specified in the last two sections with the permission of the owner, agent and lessee thereof," if summary proceedings to remove the tenants are not commenced within five days after notice of such unlawful use, served by the proper department, and are not thereafter diligently prosecuted, or if there are two or more convictions in the same house within a period of six months, either under section 150 of the Tenement House Law or under section 1146 of the Penal Law. Section 154 says that "in an action to establish a lien under this article or in any action or proceeding for a fine, penalty or other punishment for a violation of any of the provisions of this chapter, relating to prostitution, assignation or other indecency, proof of the ill-repute or the common fame of the premises which are the subject-matter of the action or proceeding or of the inmates thereof, or of those resorting thereto shall constitute presumptive evidence and it shall be presumed that such use was with the permission of the owner, agent and lessee." It is conceded that there is no express provision in any of these sections by which a violation of section 109 is made dependent upon the owner's knowledge of the offense. It is argued, however, that they reveal a statutory plan or scheme which may be thus extended by implication. We think the argument is not persuasive. The legislature had no difficulty in saying in so many words that a lien should not be imposed under section 151 unless the use was with the permission of the owner or his agent. It would have been very easy to have been equally explicit in section 124. The absence of like words in section 124 suggests a difference and not identity of meaning. On the other hand we do not think that in construing a use for prostitution as meaning more than an isolated act, we impose upon the public authorities the same burden that would rest upon them if they were required to prove permission. Continued use may, of course, lead to the inference of permission, but the inference is not inevitable and

may sometimes be unwarranted. Where the action is under section 124 for breach of section 109, the penalty follows the use though permission be disproved.

Our conclusion, therefore, is that the penalty is recoverable without reference to the knowledge or negligence of the owner; that the imposition of such a penalty assumes, however, a condition of permanence sufficient to constitute a use; and that an act of vice on a single day, followed at once by the eviction of the occupants, is insufficient by itself to show that the building has been used for prostitution within the meaning of the statute.

The judgment should be affirmed, with costs.

HISCOCK, COLLIN, CUDDEBACK, HOGAN and SEABURY, JJ., concur; WILLARD BARTLETT, Ch. J., absent.

Judgment affirmed.