No. 7746.

Court of Appeal—        Parish of Orleans.

Parish of Orleans  VS  Abraham Burglass and Mrs.
                        Henry Benton.

By Dinkelspiel, Judge.

358

# OPINION.

By his Honor John St. Paul.

This is an action to abate an alleged nuisance under the provisions of Act 47 of 1918, which provides, in substance, as follows;

I. That buildings or other places in which "assignation (sic) or prostitution is carried on, conducted, continued, permitted or exists ....... are declared to be nuisances," and the owners, agents, lessees and occupants thereof guilty of "maintaining a nuisance."

2. That the District Attorney (and others) may maintain an action to abate said nuisance and enjoin the owners, lessees and occupants from maintaining the same or permitting the continuance thereof.

3. That a violation os such injunction shall be a contempt of court, but of a kind peculiar to itself, in this; that infliction of penalties vel non is not discretionary with the court, nor is the power of the court to punish therefor merely limited (Const Art. 177); but, as in criminal statutes, a minimum as well as a maximum penalty for such contempt is fixed, which minimum (at least) shall be imposed.

362

4. That if the existence of such nuisance be established, the judgment shall include an order of abatement closing the building or other place against its use for any purpose whatever for one year thereafter, unless sooner released as mentioned below; and the use of said premises during said time by any person in any manner is likewise made a contempt of court punishable as aforesaid.

5. That upon furnishing bond with surity for the full value of the property, conditioned that he will not permit the property to be used for prostitution for one year thereafter, and upon satisfying the judge that he is "in good faith," the owner may have the property released for other purposes; subject however to a forfeiture of $100 under said bond (in addition to the liability of the owner to punishment for contempt as aforesaid) for each day the property may be used for the prohibited purpose; the same being revoverable summarily in the one original proceeding.

6. That the net amount of the fines (and forfeiture?) collected shall be paid over to the school fund.

7. That the general reputation of the premises, or of the defendants (owner and tenant), or of the occupants and habitual visitors, shall be admissable in evidence and judgment may be based thereon.

And the act is entitled, "An act, to declare houses
of assignation and prostitution...... a nuisance, & c."

I.

Neither the act itself as a whole, nor any feature
thereof, is challenged on constitutional grounds, and hence
we are not now concerned with any such consideration.
Nevertheless, in order to interpret and apply this law,
we are bound to notice the nature and extent of certain
features which find themselves therein.

It will therefore be observed/ I. That the statute is
of a highly penal character. For instance; what the legis-
lature is pleased to term a contempt, has in effect been
made an offense, to which a fixed minumum penalty has been
attached which the court _must_ inflict; not in its discretion
or for thepurpose of securing compliance with its mandate,
but _as_ _of_ _course_ and as a punishment applicable not to parties
only but even to "any person &c."

2. That the penalty of closure for one year, which
follows _as_ _of_ _course_, is incurred by the mere fact that the
premises are being used for prostitution, regardless of any
(actual) knowledge thereof on the part of the owner; which
closure is of course nothing else than a forfeiture of the
use or revenues of the property for one year.

3. And lastly, that these two features constitute the

364

essence of the ststute being the only new matter therein, and therefore the _whole_ ststute; which otherwise makes no change in the law, since admittedly the pwwer of the courts to abate the nuisance by injunction or otherwise, and punish _in the usual way_ any violation of its mandate, exists independantly of the statute. 29 Cyc 1218-1223

## II.

Considering, therefore, that the statute is in its nature highly penal, these consequences flow; that the ststute itself must be strictly construed in applying these penalties, and that the facts necessary to sustain a complaint thereunder must be proved beyond reasonable doubt; U. S. vs. 84 Boxes of Sugar, 7 Peters 453.

## III.

Now the statute (section I) does not denounce a house as a nuisance and inflict the penalties merely because an act of immorality has been committed therein, but only if "prostitution is carried on, conducted, ## continued, permitted or exists" therein.

But the term prostitution, legally and otherwise, means something more than simple immorality; it implies promiscuous or indiscriminate commerce between the sexes, 32 Cyc 731. A single immoral act, or even a series of immoral acts between _the same persons_ does not constitute _prostitution_,

or brand the house wherein they are committed a house of
prostitution; State vs Irwin, 91 N. W. Rep 960 (Iowa); also
91 N. W. 760 (8 Iowa 447); Tenement Dep't vs Mc Devitt,
215 N. Y. 160. Hence to constitute a house of prostitution,
the premises must have been maintained, even if only for
a brief period, for the purpose of promiscuous commerce
between the sexes.

And since in the very nature of things a house cannot
be maintained for such purposes without some degree of
publicity, both sought and unsought, it follows that such
a house and its "reputation" are inseperable.

And it is just these very features thereof (promiscuous
commerce therein between the sexes, and more or less wide-
spread knowledge of where it may be practiced without
restraint) which constitutes the real menace to public health
and public morals and hence the "nuisance" which the statute
intends to repress.

More than that; it is also ~~this~~ this very feature (more
or less publicity) which breathes life into these otherwise
drastic laws by fixing the owner constructive, if not
actual, knowledge of the use which is being made of his
property; thereby saving them against the specious charge
of punishing the innocent instead of the guilty and thus
taking property without due process of law. Tenement Dep't
vs Mc Devitt, 215 N. Y. 160 (Ann Cases, Am. & Eng, 1917 A 455)

Our statute indeed seems to recognize this whole situation fully; it denounces only houses "where assignation (sic) or prostitution is carried on, conducted, permitted or exists," and this irresistably compels the idea of a place or resort for lewd persons and promiscuous commerce between the sexes; that is to say (since the act cannot be broader than its title, Const. Art 31), a house of assignation, or house of prostitution, purely and simply.

And as such places cannot exist without at once (or soon) acquiring a reputation for being what they are, the statute provides that the reputation of the building, its owners, tenants, occupants and habitual visitors, may suffice as to the basis for suppressing the place. The condition of the release bond (shall not permit) and the fact that the owner must satisfy the judge that he is "in good faith," also serve to confirm the idea that the reputation of the premises is to be taken into consideration in determining what constitutes a house of assignation or prostitution. For if the facts be there, the reputation will not be wanting; and to dispense with any inquiry into reputation will inevitably lead to an abuse of the act and the warping of its purpose to other and sinister ends.

These things considered, we agree with the District Judge
that plaintiff has not made out a case against these defen-
dants under the statute.

It is shown, at most, that on a certain occasion the
police, acting upon a hint from some undisclosed source,
watched the premis<sup>e</sup>, to wit, a lodging house conducted by an
old woman, occupied by herself, her husband and her son,
and visited by her daughter and grandchildren, all of whom
as well as the house itself bear a good reputation; that
they saw a young man enter the premises with a young woman
known to them as a prostitute with whom he occupied a room
for a brief while and undeniably had intercourse; that they
also found, sitting and conversing in another room another
young man and two women, one of whom resided in the premises
and was in her negligee (not her underclothes); that this
woman had once been a prostitute but for a year or more
had been earning an honest living; and the other woman was
respectable.

As to whether or not the old woman knew that her room
was rented only for a passing purpose, there is a conflict
of evidence between her and the young man, sufficient at
least to throw doubt upon his testimony; especially with
the unexplained failure to take the testimony of his woman

companion (only two weeks after the occurence), and in the
absence of any suggestion as to the nature of the complaint
received by the police and whether anonymous or otherwise;
~~and finally, not overlooking the circumstance that this young~~
~~man who says he know but one of the officers, and him only~~
~~by sight, is yet familiarly called "Miguel" by another,~~
~~though he appears on the witness stand only as Ferdinand~~
~~S. Lambour.~~

Hence, we believe, the single _fact_ on which plaintiff
relies is not proved with anything like certainty; and
even if proved, falls far short of establishing that the
premises in question constitute a "house of prostitution,
or house of assignation" within the meaning of this act,
or in any sense.

## VI.

In conclusion, it may be superfluous yet well to say,
that the principles announced above do not apply, and are
not intended to apply, in cases of statutes and ordinances
levelled at individual cases of lewdness and immorality
where the penalties are visited directly upon the offenders;
nor in cases where nuisances in fact may exist independently
of the statute, and it is only a question of suppressing
them.

369

But wh[...] [...] mean to [...] i[...] [...]mply this; That the purpose of <u>this</u> statute, passed as a war measure, is to suppress in the interest of public health and public morals, so called "commercialized" prostitution, and put the burden of that suppression chiefly upon the owners of the property used for that purpose. That the statute means, none the less, to deal fairly with such owners, and hence to hold them to account only so far as they know, or should know, that they are aiding and abetting the loathsome traffic; that unless the statute is so understood and applied it is not only harsh, but broader than its title and objectionable on other grounds both of law and of policy; and hence our conservative interpretation thereof "ut res magis valeat quam pereat."

The judgment appealed from is therefore affirmed.

New Orleans La., March    1920