Chapter 117, Laws of 1921, the state law to carry into effect the eighteenth amendment to the Federal Constitution, adopts many of the provisions of the National Prohibition Act. By Section 20 of the state law a nuisance is defined as in Section 21 of the national act. By Section 21 of the state law an action to enjoin a nuisance may be brought in the name of the state, by the Attorney General, or by any County and Prosecuting Attorney, or by any citizen of the state. The provisions of Section 21 of the state law in regard to procedure and judgment are the same as those of Section 22 of the national act, but the state law contains this additional provision:
"Whenever the Court in any action to enjoin any nuisance under the provisions of this Act shall decide in favor of the complainant and grant the relief prayed for, it shall render judgment against the defendant for costs, and there shall also be taxed as costs a reasonable attorney's fee, not less than $50 nor more than $200 to be paid to the complainant, or his attorney, which said judgment shall constitute a lien against said house, building, boat, vehicle, automobile or structure, and may be enforced by the sale of the same."
This action to enjoin or abate a nuisance was commenced January 10, 1927, in the name of the state on the relation of Maurice L. Cone, County and Prosecuting Attorney of Sheridan County, against Sebastian Bernweiser. After a trial October 7, 1927, before the court, it was found by the judgment that the defendant, in a described house owned *Page 318 
and occupied by him, had on November 26 and 27, 1926, unlawfully possessed and sold, and on January 6, 1927, unlawfully possessed and kept, intoxicating liquors, and that the premises constituted a nuisance. It was accordingly decreed that defendant be enjoined from using and maintaining said premises for the possession and sale of intoxicating liquor, and that he pay the costs including "a reasonable attorney fee of $200." The defendant appeals.
It is contended that the evidence was insufficient to sustain the finding that the house was a nuisance. The house is located in the suburbs of the City of Sheridan, and occupied as a home by defendant who has no family. November 26 and 27, 1926, a Mexican, called Pedro, was staying with defendant in the house in question. Defendant was then working day shift in a coal mine. The state's witness, John Lombard, testified that before November 26 he knew Pedro but did not know defendant. On November 26, the witness met Pedro and went with him to defendant's house where the witness bought and drank many drinks of whiskey and at least one bottle of beer. In buying the liquor the witness dealt with Pedro until the defendant came home from work, and then he bought from defendant. The witness became drunk, and could not remember all that happened. He awoke in jail in Sheridan on the morning of November 27, and about noon of that day, on being released from jail, he returned to defendant's house to continue the spree in much the same manner as on the day before. He left defendant's house on the morning of the 28th after having spent for liquor about eleven dollars, of which ten dollars was paid to defendant by a check which was produced in evidence. About six weeks later, January 6, 1927, the Under-Sheriff of the county, in company with a Federal prohibition officer, went to the house, and found there some moonshine whiskey in a gallon jug on or under the kitchen table. On the table were glasses that evidently had been recently used for drinking whiskey. The defendant and two other men were in the house. The defendant then told the *Page 319 
officers that the whiskey was not his, but that it had been left there by a man from Montana. At the trial the defendant testified that the whiskey drank at his house by Lombard was brought there by Lombard, and that he gave Lombard cash for the ten-dollar check. He testified that the jug of whiskey found in his house by the officers on January 6, did not belong to him, but that, on his return from work that day he had found it on his porch, and rather than leave it on the porch, had put it in the house under the kitchen table.
The evidence was undoubtedly sufficient to cause the trial court to believe that in the house in question the defendant made numerous sales of intoxicating liquor to the witness Lombard on two or three successive days in November and had unlawful possession of the same kind of liquor that was being drunk by two other men on January 6. We cannot agree that those facts were not sufficient to justify the inference that the defendant maintained a nuisance as defined by the statute.
The fact that liquor has been sold once, or even oftener, in a building does not necessarily establish the character of the building as a common nuisance. The test of a nuisance is not the number of sales, or the length of time liquor is kept, but whether the place is maintained for keeping and selling in the sense of the statute. In the equitable proceeding for injunction the court is dealing with a place of a forbidden character and not with a forbidden act of sale. United States v. Ward,6 F.2d 182. For the punishment of a mere forbidden act of sale the statutes providing for criminal prosecution furnish an adequate remedy. Barker v. United States, (C.C.A.) 289 Fed. 780; Muncy v. United States, (C.C.A.) 289 Fed. 780. Before a court of equity should declare a place a common nuisance under the statute, it should be convinced that the place has been used for the forbidden purpose habitually, continuously or recurrently. United States v. Cohen, 268 Fed. 421; United States v. Butler, 278 Fed. 677; Schechter v. United *Page 320 
States, (C.C.A.) 7 F.2d 881. These principles that seem to be recognized by the cited decisions of the Federal Courts in the enforcement of the National Prohibition Act, are consistent with the holdings in cases under somewhat similar state statutes. Commonwealth v. McArty, 11 Gray 456; Commonwealth v. Patterson,138 Mass. 498; State v. Stanley, 84 Me. 555, 24 A. 983; City of Salina v. Laughlin, 106 Kan. 275, 187 P. 676; State v. Jenkins,66 Mont. 359, 213 P. 590; Tenement House Dept. v. McDevitt,215 N.Y. 160, 109 N.E. 88, Ann. Cas. 1917a. 455.
But, as will be seen from the foregoing and other authorities, it is not necessary, in order to show a nuisance, that there shall be direct evidence of a series of sales throughout any particular period. Sales on a single day, or even a single sale, may be made in such circumstances as to justify the inference that use of the building in making the sale or sales proved was a part of a habit or practice. See, Commonwealth v. Coolidge,138 Mass. 193.
Tenement House Dept. v. McDevitt, supra, was an action to recover a penalty for violation of the Tenement House Law of New York. The charge was that the building had been used for the purpose of prostitution. It was held that the penalty applied to a continuous use. After a review of several cases, including some of those cited supra, the court said:
"In all these cases, some element of permanence has been held essential to a conviction. It is true, of course, that a building may be so used even on a single day as to justify the inference, with but slight additional evidence, that the illicit use has been continuous. But the inference in such a case is one of fact, and not of law, and must be drawn, if at all, by the trial judge in the light of all the circumstances."
Under the foregoing principles we cannot say that the trial judge was not justified in inferring from the facts proved that the house in question was being maintained as a nuisance. *Page 321 
It is contended that the evidence failed to show that the house was a nuisance at the time of the trial and judgment, or at any time later than January 6, 1927. The statute (Sec. 21, C. 117, Laws 1921) provides that:
"It shall not be necessary for the court to find the property involved was being unlawfully used as aforesaid at the time of the hearing * * *."
Under that provision, if not without it, the court had the right to infer from prior violations the continued existence of the nuisance. United States v. Chesebrough Mfg. Co., (D.C.)11 F.2d 537; Engler v. United States, (C.C.A.) 25 F.2d 39. There can be no doubt that the action in this case was seasonably brought. See, Engler v. United States, supra, and cases there cited.
The part of the judgment that taxes as costs a reasonable attorney's fee of $200 under the above-quoted provision of Section 21 is attacked on several grounds. Not all of the grounds need be considered.
The state constitution (Sections 1 and 2 of Article 14) provides:
"All state, city, county, town and school officers, (with exceptions not now material) shall be paid fixed and definite salaries. * * *"
Section 2 of the same article, after authorizing the legislature to provide by law the fees of those officers mentioned in the exception to the preceding section, continues:
"But all other state, county, city, town and school officers shall be required by law to keep a true and correct account of all fees collected by them, and to pay the same into the proper treasury when collected, and the officer whose duty it is to collect such fees shall be held responsible, under his bond, for neglect to collect the same; * * *."
Section 3 of the same article fixes the maximum salaries of several officers, including County and Prosecuting Attorneys. *Page 322 
The salary of the County and Prosecuting Attorney is fixed and made definite by statute (Sec. 1452, C.S. 1920), within the limits of the constitutional restriction as to the maximum.
It is quite evident that the foregoing constitutional provisions mean that the County and Prosecuting Attorney shall not receive as compensation any fees for services rendered in the performance of the duties of his office as defined by the state laws. That is as far as we need go for the purpose of this case in stating our opinion as to the meaning of those provisions.
By Section 1451, C.S. 1920, it is provided among other things, that:
"Every county and prosecuting attorney shall appear in the District Court in behalf of the state and the county in which he may be elected or appointed, in all indictments, suits and proceedings which may be pending or arise in said connty, wherein the state or the people thereof, or said county may be a party; * * *."
By Section 1454, that:
"Each county and prosecuting attorney shall receive such fees or salary, or both, as may be allowed him by law, and the county and prosecuting attorney shall not receive any fee from or prosecute or defend for any individual or corporation in any civil or criminal suit, or proceeding at law, in which this state or his county may be a party, but in all such cases he shall prosecute or defend for the state or county. * * *"
The reference here to "fees" to be received by the County and Prosecuting Attorney is explained by the fact that this statute was enacted before the adoption of the state constitution, and has been carried forward into subsequent compilations of the state laws. The Section remains in force in so far as it is not repugnant to the constitution. Const. Sec. 3, Art. 21. *Page 323 
By Section 36 of the Act (C. 117, Laws 1921) under which the present action was instituted, it is provided:
"It shall be the duty of every prosecuting attorney in this state to prosecute by complaint, information or indictment in courts of competent jurisdiction all violations of this act in the manner now provided by law for the prosecution of criminal offenses under the general statutes of this state and in the manner as herein defined."
It may be that this section of the law of 1921 refers to criminal prosecutions only. However that may be, it, and the other provisions of the law of 1921, leave unrepealed the other statutes defining the duties of County and Prosecuting Attorneys.
We think it clear that the County and Prosecuting Attorney, in prosecuting this case, was representing the state, or the public, and, therefore, performing an official duty under the laws of the state. His compensation therefor was covered by his salary. He was entitled to no additional fee.
As we have already said, the legislature in enacting our intoxicating liquor law, followed in most respects, as far as applicable to state conditions, the national act. Under the national act (Sec. 22) an action to enjoin a nuisance may be brought in the name of the United States by the Attorney General, or any one of several other named officers. There is no provision for the commencement of such a proceeding by a private citizen, nor for the recovery of an attorney's fee. Under the state law (Sec. 21), the proceeding may be commenced by the Attorney General, or by any County and Prosecuting Attorney, "or by any citizen of the state," with the added provision for taxing "as costs a reasonable attorney's fee" * * * "to be paid to the complainant or his attorney." The use here of the word "his" seems to show that the legislature did not understand that the state was to be considered the "complainant." There is no indication in the law, *Page 324 
nor any contention in the case at bar, that the fee in question should be paid to the state. On the other hand, it is conceded that it will be received and retained by the County and Prosecuting Attorney, who was both "complainant" and attorney.
In the face of constitutional provisions plainly intended to abolish the system of paying fees as additional compensation for such services as were performed by the County and Prosecuting Attorney in this case, we are forced to hold either that the legislature did not intend the statute to operate in a case like this, or that the statute, in so far as it was intended so to operate, is void. We prefer to say that the legislature did not intend that the provision should apply to a case in which the complainant and attorney is a public officer whose duty it is to prosecute the case without fee. It is not necessary to decide anything as to the validity of the statute as applied to other cases.
It will be ordered that the judgment of the District Court be modified by striking therefrom the part that adjudges that the defendant pay the attorney's fee. The judgment in other respects will be affirmed.
BLUME, Ch. J., and RINER, J., concur. *Page 325