Scileppi, J. (dissenting).
I dissent and vote to affirm. The substance of the majority’s opinion is that the defendant landlord’s inability to control the unlawful act of his tenant should preclude the imposition of any penalty upon him. I am not at variance with this position. It is offensive to our traditional sense of justice to hold that a person can be penalized for conduct over which he has no control; but it is my opinion that the defendant landlord in this case had such control and, therefore, could and should have re-entered the premises to discontinue the unlawful acts of his tenant.
While it is true that section 231 (subd. 1) of the Real Property Law speaks only in terms of a landlord’s right to re-entry when “ any illegal trade, manufacture or other business ” is being conducted on his premises, I would not give the statute such a strict construction so as to limit it only to profit making ventures.
The majority is limiting the imposition of a penalty against a landlord for acquiescing in the tenant’s unlawful use of his land only in those cases where the landlord has the right of re-entry. I am of the view, however," that by a reasonable construction of the statute, or even by common-law right, every landlord has the right to re-enter his premises to discontinue an unlawful use of his property whenever such use, with knowledge thereof, will result in punishment to him. Moreover, this should not depend upon whether the unlawful activity be characterized as a “ business ” or, as is incredibly denominated in the instant case, a ‘1 hobby ’ ’.
In People ex rel. Jay v. Bennett (14 Hun 63) the First Department, in construing the predecessor statute to section 231, which contained the identical relevant language (L. 1873, ch, 583), stated: ‘ ‘ This statute was intended not only to prevent the use of premises for an unlawful purpose, but to protect the landlord from the consequences of allowing such unlawful purpose to continue. It gave him in other words the power to put an end *294 to it, and thus to shield himself from any penalty for knowingly permitting the premises to be used as indicated.” (Supra, at p. 66; emphasis supplied.)
Surely if a statute were to impose a penalty on a landlord for knowingly permitting a tenant to store narcotics on his property, it would be unreasonable to deny the landlord the right to re-enter when such conduct could result in a penalty to the landlord; and, of course, it should make no difference whether the tenant be storing the narcotics for sale or for his own personal use.
Even assuming that the majority’s strict interpretation of the statute was correct, it is my view that the judgment should nevertheless be affirmed.
The majority takes the position, relying upon Bertholf v. O’Reilly (74 N. Y. 509) that, if the defendant had knowingly leased the premises to his son for a purpose which was unlawful at the time the lease was executed, then the defendant would have no cause to complain. The opinion further states, however, that in the instant case, the lease having been executed before the enactment of the ordinance, no sanction can be imposed upon the defendant. The majority recognizes, however, that the owner 1 ‘ cannot permit an unlawful condition to persist with impunity ’ ’. This is precisely what the defendant was guilty of in the case at bar. Although the ordinance was not enacted until April 13,1966, long after the lease was executed, defendant took no action whatsoever until the day of his arrest—almost a year later. Since the lease provided that the tenancy could be terminated at the whim of either party by merely giving 60-day written notice, defendant’s inaction for almost a year while the ordinance was effective, in and of itself, is sufficient to warrant an affirmance (Tenement House Dept. of City of N. Y. v. McDevitt, 215 N. Y. 160).
Finally, I fail to perceive how the conclusion of the majority, that there, was no right of re-entry by the owner, can be reached on the flimsy and clearly incredible facts relied upon to find a landlord-tenant relationship between father and son. When considering the relationship of the parties, their testimony at the trial, and the terms of the agreement itself, only one reasonable conclusion can be drawn—the lease was a sham and, therefore, the defendant had a right to re-enter at anytime.
*295 As to the majority’s rather inconclusive, gratuitous discussion of the constitutionality of the ordinance, suffice it to say that in reading both the “ Purpose ” and the ordinance itself, it is clear that the enactment is, on its face, a reasonable exercise of the police power (People v. Stover, 12 N Y 2d 462). With regard to the possibility of the ordinance’s application to the “ storage ” of a single vehicle on the owner’s land, it might well be held in such a case that the ordinance is unconstitutional as so applied. This, however, is not the instant case. On the contrary, we are involved herein with the storage of 100 junked vehicles—precisely the kind of eyesore that the ordinance was reasonably promulgated to prevent.
Accordingly, the judgment of the Broome County Court should be affirmed.
Judge Gtibson concurs with Judge Burke ; Chief Judge Fuld and Judge Bergan concur solely on the ground that the defendant, not having the right to enter the property on which the vehicles were stored in order to remove them, may not be convicted for his failure to do so; Judge Scileppi dissents and votes to affirm in a separate opinion in which Judges Breitel and Jasen concur.
Judgment reversed, etc.