BURTON S. CASTLES, Respondent, *v.* MAX ROVENGER and Others, Appellants.

First Department, January 9, 1925.

**Summary proceedings to dispossess — proceeding is based on violation of Labor Law uncorrected by tenants — landlord failed to show violation — tenants entitled to reasonable opportunity to remove violation before summary proceedings under Labor Law, § 316, subd. 3.**

The plaintiff who instituted this proceeding to dispossess the defendants on the ground that there had been a violation of the Labor Law by the tenants which remained uncorrected, did not establish a violation of the Labor Law, and failed to show any violation thereof, except by notices which had been served by the bureau of fire prevention, which, in themselves were not evidence of a violation, and by testimony that at one time more than six people were employed, which does not constitute a violation unless the employment is continuous.

The plaintiff did not bring himself within subdivision 3 of section 316 of the Labor Law, authorizing the landlord to dispossess the tenant, where, by the terms of the lease, the tenant has agreed to comply with the provisions of the Labor Law, but has failed to do so, for the landlord did not show that a reasonable opportunity had been given to the tenants to comply with the violations of the Labor Law prior to the institution of summary proceedings.

APPEAL by the defendants, Max Rovenger and others, from a determination and order of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 16th day of January, 1924, reversing a final order of the Municipal Court of the City of New York, Borough of Manhattan, Ninth District, in summary proceedings to dispossess.

*Shaine & Weinrib [Charles J. Nehrbas* of counsel; *Edward C. Weinrib* with him on the brief], for the appellants.

*James I. Moore [Henry DeForest Baldwin* of counsel; *John W. Castles* with him on the brief], for the respondent.

BURR, J.:

This is a summary proceeding instituted by the landlord of premises 43 West Thirty-eighth street, borough of Manhattan, New York city, to dispossess the tenants and undertenants. The petition alleges in detail the making of a lease covering the entire

building for a term of twenty-one years commencing January 1, 1920, to Max Rovenger and others, the original tenants; the various clauses and covenants of the lease; and further alleges that the tenants violated the covenant against assignment and subletting; that an assignee of the tenants converted the three upper floors of the building into a factory contrary to the terms of the lease and in violation of law; that violations of the Labor Law were filed against the premises by the bureau of fire prevention of the city of New York; that the tenants refused to comply with the orders of the bureau of fire prevention and continued in possession of the premises; and that the landlord thereupon elected to declare the lease at an end, of which election notice in writing was given to the tenants.

Maurice Cohn, by various assignments the principal tenant of the entire premises, answered denying the material allegations of the petition and setting up various defenses.

Upon the trial before the Municipal Court justice and a jury, the landlord withdrew the allegation with respect to the violation of covenants against assignment, and sought to prove the allegations with respect to violation of the Labor Law.

The landlord offered in evidence three papers, each dated September 26, 1922, from the bureau of fire prevention, calling for the alteration of the premises in order to make them comply with various provisions of the Labor Law. It was not contended by the tenants upon the trial, and it is not here contended, that any alterations in the premises were made. The tenants' position then was and now is that the premises were not within the provisions of the Labor Law, because not more than five persons were there engaged in manufacturing.

When the notices from the bureau of fire prevention were served, the tenant Leon was in possession of the premises. There was a restaurant on the ground floor, and the floor above was occupied by a subtenant, Meisel, who was in the leather business. It was on Meisel's floor that the alleged violations occurred. The landlord's agent called the said notices to Leon's attention, and he promised to attend to them.

The landlord called as a witness an inspector of the bureau of fire prevention, who stated that he visited the premises on October 11, October 28, November 3 and November 18, 1922, to see if the order of the bureau had been complied with. He at no time stated that more than five persons were on the premises engaged in manufacturing. He said that on November eighteenth there were less than five, on November third there were only two persons, on October twenty-eighth there were less than six. The

only reference by the witness to more than five persons being on the premises at any time is contained in the following statement: "After I made the inspection when I found more than six I went to Mr. Gibbs and served him with a summons."

No date is given upon which the inspection mentioned was made, and the witness did not state that he found more than six engaged in manufacturing.

No other proof was produced by the landlord with respect to the alleged violations of the Labor Law.

On October 28, 1922, about a month after the date of the said notices received from the bureau of fire prevention, the landlord wrote a letter to the then tenant Leon:

"Mr. LOUIS LEON,
  "# 42 West 38th Street,
        "New York City:

"DEAR SIR.— This is to notify you that pursuant to Mr. Burton S. Castle's instructions, we hereby elect to cancel the lease to premises No. 43 West 38th Street as of November 21st, 1922, in accordance with terms of said lease.

"Said lease provides that if you assign or sublet said premises without the consent of the landlord the latter may cancel same. You have sublet said premises without our consent to the Traymore Conception Company.          Very truly yours,
                              "FRED'K FOX & CO., INC.,
"AEG-WFT                              By A. E. GIBBS."

No mention is made in this letter of any violation of the Labor Law. It appears from the evidence as a matter of fact that on October 28, 1922, the same day that the letter was written, an inspection of the premises showed no violation.

This proceeding was instituted November 8, 1922.

At the close of the evidence both sides moved for the direction of a verdict, and expressly waived a jury trial. The court decided in favor of the tenants, writing no opinion.

The petition alleges that the tenants converted the three upper floors of the premises into a factory, in violation of the law. Of this there is no proof.

The Labor Law of 1921 (as amd. by Laws of 1921, chap. 489) defines a "factory" in section 2, subdivision 9, as including "a mill, workshop or other manufacturing establishment," etc., and further provides: "the provisions of this chapter affecting structural changes and alterations, shall not apply to factories or to any buildings, sheds or other places used for or in connection therewith where less than six persons are employed at manufacturing except as otherwise prescribed by the rules."

The only evidence upon the question of violation of the Labor Law consists of three notices from the bureau of fire prevention calling for structural changes, and the testimony of an inspector from that bureau.

The only oral testimony upon the question of alleged violation of law was that given by the inspector of the bureau of fire prevention. This witness testified to what he found when he visited the premises after the violations had been served. He went to the premises to see if they had been complied with. Upon the dates with respect to which he stated what he found, he says there were less than six persons engaged in manufacturing. There is an indirect reference to " more than six," but no time is given, nor is there any statement as to what the six were doing. Moreover, if it were true that upon a single day more than six persons on the premises were engaged in manufacturing, this would not make the premises a factory. The definition of factory contained in the Labor Law implies at least some degree of continuity. The matter is well expressed by Judge CARDOZO in *Tenement House Dept.* v. *McDevitt* (215 N. Y. 160). In that case the question was whether or not the law had been violated by a certain use of a tenement house. The word " used," said Judge CARDOZO, " imports, not an isolated act of vice, but some measure, even though brief, of continuity and permanence. To say that a building is used for such a purpose, means, in substance, that it is kept or maintained for such a purpose." (215 N. Y. 164.)

This proposition is especially applicable to a situation where, as here, the alleged violation is the act of a subtenant.

The Labor Law does not provide that a landlord may dispossess his tenant in any case in which the law has been violated. The provision relied upon by the respondent is contained in section 316, subdivision 3, and reads as follows: " The tenant of any part of a tenant-factory building shall permit the owner, his agents and employees to enter and remain upon the demised premises whenever and so long as may be necessary to comply with the provisions of law, the responsibility for which is by this section placed upon the owner; *and his failure or refusal so to do* shall be a cause for dispossessing said tenant by summary proceedings to recover possession of real property, as provided in the Code of Civil Procedure. Whenever by the terms of a lease any tenant *has agreed to comply with or carry out any of such provisions, his failure or refusal so to do* shall be a cause for dispossessing said tenant by summary proceedings as aforesaid."

It is not claimed that the landlord sought to enter the premises in order to comply with the law, or that the tenant refused to

permit him to do so. The landlord's case is based solely upon the last sentence of the provision above quoted. It is claimed that the tenant had agreed to comply with the provisions of the law, and had failed or refused to do so.

The provision of the lease relied upon by the landlord is as follows: " The lessees further covenant that they will at their own proper costs and charge, promptly comply with all and every one of the rules, orders, ordinances and regulations of any Municipal Department of the City of New York and with all and every one of the statutes of the State of New York, and of the United States of America, which may relate to or affect the premises, and with all of the rules, orders, and requirements of the New York Board of Fire Underwriters, and will indemnify and save harmless the owner from any loss or damage caused by failure to comply therewith, and the lessees covenant that they will at their own proper cost and expense do and perform any acts which by virtue of said laws, ordinances, regulations and statutes are required of the owner of the premises herein demised by virtue of the fact of his ownership."

The question here involved concerns merely the private right of the landlord to forfeit a valuable lease and remove the tenant from the premises. The only controversy is a private one between the parties over the right to possession of the premises.

The testimony produced by the landlord, in his effort to prove the tenant's failure or refusal to comply with the provisions of the law, was to the effect that a tenant named Leon had been advised of the notices from the bureau of fire prevention, and had promised to attend to them. It is not contended by defendants that the alterations called for by the notices were made. It is established, however, by undisputed testimony that the condition complained of ceased to exist. If the premises had at any time been used as a " factory " within the meaning of subdivision 9 of section 2 of the Labor Law (as amd. by Laws of 1921, chap. 489), there was no such use on the dates of the last three visits of the inspector, namely, October 28, November 3 and November 18, 1922.

The landlord seems to have been satisfied that the condition complained of by the officials had been removed, if it ever existed, for on October 28, 1922, he wrote the tenant the letter above referred to purporting to cancel the lease, which letter makes no mention of any violation of the Labor Law.

The statute does not provide for summary removal of the tenant upon proof that six or more persons are there engaged in manufacturing. It provides that " whenever by the terms of a lease any tenant has agreed to comply with or carry out any of such

·provisions [*i.* *e.*, the provisions with respect to fire prevention], his failure or refusal so to do shall be a cause for dispossessing said tenant by summary proceedings as aforesaid."

This language plainly contemplates that the tenant shall have a reasonable opportunity to comply with the provisions of the statute, and it is only upon his failure or refusal to avail himself of such opportunity that he may be dispossessed. The respondent concedes that the tenant may comply by reducing the number of persons engaged in manufacturing. It necessarily follows that he is entitled to a reasonable opportunity to do this.

This is emphasized by the provisions of the first sentence of subdivision 3 of section 316 of the Labor Law: " The tenant of any part of a tenant-factory building shall permit the owner, his agents and employees to enter and remain upon the demised premises whenever and so long as may be necessary to comply with the provisions of law, the responsibility for which is by this section placed upon the owner; and his failure or refusal so to do shall be a cause for dispossessing said tenant by summary proceedings to recover possession of real property, as provided in the Code of Civil Procedure." *

This sentence plainly deals with a situation in which a tenant-factory is being conducted in a manner which does not comply with the law, and with the attempt to bring about a condition of compliance. The words " so long as may be necessary to comply " clearly indicate the lapse of a reasonable time in which to bring about a change in the conditions. Then follows the sentence relied upon by the landlord in this proceeding: " Whenever by the terms of a lease any tenant has agreed to comply with or carry out any of such provisions, his failure or refusal so to do shall be a cause for dispossessing said tenant by summary proceedings as aforesaid."

The same thought is carried out in this sentence. The entire subdivision deals with efforts to remedy a situation in which a building is being used in a manner that does not comply with the statutory provisions. It assumes an existing unlawful condition, and provides that the condition must be remedied. If the landlord desires to take the necessary steps, the law gives him a right to enter upon the premises for that purpose. If the tenant refuses to permit him to enter, he may be removed. It is then provided that if the tenant is under a contractual duty with the landlord to take the necessary steps, he must do so. It is only upon his failure or refusal to do so that he may be removed. The whole subdivision implies a reasonable opportunity to remedy an unlawful

---

* Now Civ. Prac. Act, art. 83, added by Laws of 1921, chap. 199, as amd.—[REP. ·

condition. This opportunity is clearly given to the landlord in the first sentence. It is equally clear that the second sentence gives to the tenant the same opportunity.

In the case at bar, if any violation occurred, it was the act of a subtenant. The notices from the bureau of fire prevention are dated September 26, 1922. Four days later, on September 30, 1922, the tenant, Leon, was in bankruptcy, and a receiver had been appointed. The receiver knew nothing of the alleged violations until the commencement of this proceeding. Cohn, the party who is now most vitally interested, took an assignment from the receiver in December, 1922, after the institution of the proceeding. He at once started dispossess proceedings against the one alleged to have violated the law. Under these circumstances, it cannot be said that there was any lack of diligence in proceeding against the subtenant, even assuming that the law was violated and the landlord had proven it by competent legal proof.

The scheme of the law seems to be that if the law is violated upon the premises, those guilty may at once be prosecuted. Furthermore, the condition must be remedied. Subdivision 3 of section 316 deals entirely with remedying the condition. Ordinarily the landlord must do this. But the lease may provide that it is the tenant's duty. If so, the landlord may require the tenant to perform his duty under penalty of removal. The penalty is provided in order to enable the landlord to compel the tenant to live up to his agreement, and to save the landlord from the dilemma of either going to the expense himself or standing renewed prosecution. If the tenant fails or refuses, and then only, he may be removed.

The landlord failed to prove that the law was at any time violated upon the premises. The notices from the bureau of fire prevention are not of themselves evidence of violation. (*Gorham Co.* v. *United Engineering & Contracting Co.*, 202 N. Y. 342; *Health Department* v. *Rector, etc., Trinity Church*, 145 id. 32, 46; *Fire Department* v. *Gilmour*, 149 id. 453, 458.)

The oral testimony wholly failed to meet the required degree of proof. The most that we can gather from the inconclusive statements of the witnesses is that, on one single occasion there may have been six or more persons employed in the building. Even assuming that this happened, it would not follow that a " factory " was " conducted " in the building within the meaning of section 2, subdivision 9, sections 271, 272 and 273 of the Labor Law. There must be " some measure, even though brief, of continuity and permanence." (*Tenement House Dept.* v. *McDevitt, supra.*)

The law plainly contemplates an opportunity to remedy the condition. Forfeiture follows only upon " failure or refusal " to` comply. Upon this branch of the case, the landlord not only failed to furnish proof in support of his contention, but his own witnesses proved the contrary. They testified that, for a considerable period prior to the commencement of this proceeding, the premises were free from even suspicion of violation. If any issue of fact was involved, it was resolved in favor of the tenants by the trial court.

The determination appealed from should be reversed, with costs in this court and in the Appellate Term, and the judgment of the Municipal Court affirmed.

CLARKE, P. J., MERRELL, FINCH and MARTIN, JJ., concur.

Determination appealed from reversed and final order of the Municipal Court affirmed and reinstated, with costs to the appellants in this court and the Appellate Term.