Martha Wolff, Landlord, *v.* Sadie Dicker, Tenant, and John Doe and Others, Undertenants.

Municipal Court of New York, Borough of Queens, Fifth District, August 21, 1934.

*Greenbaum, Wolff & Ernst,* for the landlord.

*Alex H. Mandeltort,* for the tenant and undertenants.

Morris, J. The tenant, Sadie Dicker, occupies the premises under written lease dated November 1, 1932, and expiring October 31, 1934, two paragraphs of which read as follows:

" *3rd.* That the Tenant shall promptly execute and comply with all statutes, ordinances, rules, orders, regulations and requirements of the Federal, State and City Government and of any and all their Departments and Bureaus applicable to said premises, for the correction, prevention, and abatement of nuisances or other grievances, in, upon or connected with said premises during said term; and shall also promptly comply with and execute all rules, orders and regulations of the New York Board of Fire Underwriters for the prevention of fires, at her own cost and expense."

" *17th.* It is expressly understood and agreed that in case the demised premises shall be deserted or vacated, or if default be made in the payment of the rent or any part thereof as herein specified, or if without the consent of the landlord, the tenant shall sell, assign, or mortgage this lease or if default be made in the performance of any of the covenants and agreements in this lease contained on

the part of the tenant to be kept performed, or if the tenant shall fail to comply with any of the statutes, ordinances, rules, orders, regulations and requirements of the Federal, State and City Government or of any and all their departments and bureaus applicable to said premises or hereafter established as herein provided, or if the tenant shall file a petition in bankruptcy or be adjudicated a bankrupt or make an assignment for the benefit of creditors or take advantage of any insolvency act, the landlord may, if she so elect, at any time thereafter terminate this lease and the term thereof, on giving to the tenant five days notice in writing of her intention so to do, and this lease and the term thereof shall expire and come to an end on the date fixed in such notice as if said date were the date originally fixed in this lease for the expiration thereof. Such notice may be given by mail to the tenant addressed to the demised premises.''

There is no question but that in view of the decisions paragraph 17 of the lease just quoted creates a conditional limitation. (*Burnee Corp.* v. *Uneeda Pure Orange Drink Co.*, 132 Misc. 435; *Ehret Holding Corp.* v. *Anderson Galleries*, 138 id. 722.)

As stated in the case first cited above (at p. 442): " The third example of conditional limitation grows out of a breach of condition on the part of the tenant. That type arises from a provision inserted in leases for the benefit of the landlord, whereby, upon a violation by the tenant, the former is entitled to serve a notice electing to terminate the lease after the expiration of a certain specified time, thus creating a limitation of the term measured by the period of time fixed in the notice."

As expressed in *Martin* v. *Crossley* (45 Misc. 254, at p. 256): " It is the notice and not the breach of condition which operates upon the lease."

As stated by Mr. Justice Levy in *Burnee Corp.* v. *Uneeda Pure Orange Drink Co.* (*supra*, at p. 442): " The breach is only an event antecedent to, and not the direct cause of, the expiration. The landlord is given the privilege in the original instrument to cancel it by notice, which practically substitutes a short period for the original term, and whether the occasion of this notice is the breach of the condition or a cause which does not reflect upon the tenant's conduct is quite immaterial. The lease expires by a mode of limitation which the landlord is granted the sole privilege to exercise."

In the instant case it is conceded by the tenant that there was a violation of the covenants of the lease and that there was a violation of the ordinance of the city of New York, to wit, section 154, article 11, chapter 10, in that a frame garage leased to the tenant was occupied by two families of colored people. It was further

conceded that on July ninth a letter was sent by the landlord, received by the tenant, and which contained a notice of said violation, received from the authorities of the city of New York dated July 5, 1934.

It was likewise conceded by the tenant that a conversation was had between Mr. Richard Wolff, the agent for the landlord, and the tenant on July twelfth, at which time the violation was discussed and from which testimony it clearly appears that the tenant knew that the occupancy of two families in the garage in question was a violation of an ordinance of the city of New York.

It is also conceded by the tenant that on July thirteenth she was served with a notice terminating the tenancy as of July 19, 1934, and which notice it is conceded complies with section 17 of the lease quoted above. It is admitted by the landlord that at the time of trial the violation had been removed, while the tenant testified that the occupancy of the garage which brought about the violation had ceased on July 15, 1934. This testimony of the tenant has not been controverted.

The tenant contends that, in view of the fact that the violation was removed on or about July fifteenth, prior to the date fixed in the notice of termination of the lease as the date which the landlord fixed as the expiration of the term of the lease, the notice served by the landlord is inoperative in view of the language of paragraph 3 of the lease read in conjunction with paragraph 17 quoted above and that the tenant has complied with the ordinance of the city of New York which it is conceded she violated.

The language of paragraph 3 of the lease reads: " That the tenant shall promptly execute and comply with all statutes, ordinances," etc., while the language of paragraph 17, in so far as it affects the right of the landlord to maintain these proceedings, reads, " or if default be made in the performance of any of the covenants and agreements in this lease contained on the part of the tenant to be kept performed or if the tenant shall fail to comply with any of the statutes."

The question to be decided in view of the language of paragraph 3 and paragraph 17 just quoted is whether the tenant has a reasonable time to comply with a violation after same has been placed upon the property. That question is answered by defining the word " promptly." It is the adverbial form of " prompt " and as stated in *Lewis* v. *Hoyer* (16 N. Y. Supp. 534, at p. 536): " This did not mean that they would be shipped within a reasonable time, but that the shipment would be made with greater celerity than is ordinarily comprehended by a reasonable time. It implied that the latter would be made simultaneously with the acceptance, or at least

with receipt of advice that the draft had been accepted. ' At once ' is convertible with ' prompt,' ' forthwith.' These terms, in their ordinary acceptation, mean ' at the same point of time, immediately, without delay, at one and the same time, simultaneously, directly ' (Webst. Int. Dict. ' Once,' p. 1002; ' Forthwith,' p. 588; ' Prompt,' p. 1147), and are not wholly without judicial definition. In *Tobias v. Lissberger*, 105 N. Y. 410, 12 N. E. Rep. 13, the Court of Appeals says that a contract for ' prompt ' shipment was not performed by a shipment within a reasonable time, but that the shipper was thereby bound to ship with greater dispatch than in a reasonable time."

As stated in *Brewer* v. *Lepman* (127 Mo. App. 693, at p. 696; 106 S. W. 1107): " A man has a reasonable time in which to do a thing, where no time is prescribed, without the aid of the word ' promptly.' So it ought to be clear that the use of that word should entitle him to something more than he would have if he had not made use of it."

True it is that the lease is the lease of the landlord. However, the lessee, the tenant, in this case was not obliged to sign a lease which required that she execute promptly all statutes and ordinances, and applying the word " promptly " to the language in paragraph 17, it must be interpreted to be the intent of the parties that if the tenant shall fail to comply promptly with any of the statutes the landlord may at any time thereafter terminate the lease. It may be that the lessee in this particular instance was inclined to minimize the importance of the language used, assuming that the tenant read the paragraphs referred to. If paragraph 3 of the lease eliminated the word " promptly," paragraph 17 of the lease could readily be interpreted to mean " or if the tenant shall fail to comply within a reasonable time with any of the statutes."

The tenant by her own act created the condition which brought about the violation, and assuming that the violation was removed on July fifteenth, or within five days after the notice was received by the tenant from the landlord of the violation, such compliance, in my opinion, in view of the language of the lease, and the facts in this case, was not a compliance done or rendered quickly or immediately but might be termed to be a compliance within a reasonable time. I am not unmindful of the case of *Castles* v. *Rovenger* (211 App. Div. 356). The clause in the lease in the *Castles* v. *Rovenger* case permitting the landlord to dispossess the tenant for the tenant's failure or refusal to comply or carry out any of its provisions did not contain the word " promptly " and the question involved was the language of the Labor Law relating to the engagement of more than five persons on premises in manufacturing. The court held in that case, in view of the language of

the lease and the Labor Law applying to the alleged violation, that the tenant had a reasonable opportunity to comply with the statute which he may do by reducing the number of employees.

In the instant case the court is bound by the language of the lease and can spell out no other meaning for the word " promptly " than that already given. It is the opinion of the court that the word " promptly," as a matter of law, permitted the landlord to terminate the lease as of the date fixed in the notice served upon the tenant and that the lease, therefore, terminated and expired as of July 19, 1934.

It may be unfortunate for the tenant under the existing circumstances but the lessee was not obliged to sign the lease including the use of the word " promptly."

Holding as a question of law that the tenant in view of the language of the lease did not have a reasonable time to comply with the provisions contained in paragraphs 3 and 17 of the lease under the facts of this case and finding as a fact that the tenant having knowledge of the violation prior to July 10, 1934, and which violation she created herself that the tenant failed promptly to comply with the ordinances, the landlord is, therefore, entitled to a final order in this proceeding, awarding possession of the premises.

Five days' stay.